440 So.2d 673 (1983)
HOBBS CONSTRUCTION AND DEVELOPMENT, INC., Appellant,
v.
PRESBYTERIAN HOMES OF the SYNOD OF FLORIDA and Leon County Health Facilities Authority, Appellees.
No. AS-222.
District Court of Appeal of Florida, First District.
November 18, 1983.
Bill R. Hutto, Panama City, for appellant.
David A. Monaco of Cobb & Cole, P.A., Daytona Beach, for appellees.
JOANOS, Judge.
In this interlocutory appeal, Hobbs Construction and Development, Inc. (Hobbs) contends the trial court erred in granting partial summary judgment to Presbyterian Homes of the Synod of Florida (Presbyterian Homes) and Leon County Health Facilities Authority (Leon County) on their counterclaim alleging Hobbs' claim of lien to be fraudulent. We affirm.
Hobbs entered into a construction contract with Presbyterian Homes and Leon County to build a continuing care health facility, Westminster Oaks. The parties had a cost-plus contract with a guaranteed maximum price of $7,250,000.00 and provisions for changes in work with prior written approval by change orders. For purposes of this appeal, the parties adopt $7,268,206.00 as the guaranteed maximum rate. Hobbs filed a claim of lien, with sworn support that the total value of work performed was $8,043,142.09, with an outstanding balance of $677,023.15. Presbyterian Homes and Leon County counterclaimed that the lien was fraudulent under § 713.31, Fla. Stat. (1981).
The deposition of Hobbs' chief engineer, Wenick, showed how Hobbs compiled the lien. Included were $150,524 for delays; $134,009 for additional field overhead expenses; $237,093 for overtime labor; $21,441.63 for markup on overtime labor; and $1,139.24 as interest on a withheld payment at a 16.5% rate of interest.
Wenick revealed that the above amounts were not authorized by the contract and that they were not the subject of any change order or change order application.
The trial court found that Hobbs should not have included in the claim of lien the amounts not authorized by the contract or change orders; such inclusion amounting to a willful exaggeration, and therefore a fraudulent lien within the meaning of Section 713.31(2), Florida Statutes.
Section 713.31(2)(a), Florida Statutes (1981), provides that any mechanic's lien in which the lienor has willfully exaggerated the amount or has compiled the claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien. The determination that a lien is fraudulent is a complete defense to enforcement of the lien. Section 713.31(2)(b), Fla. Stat. (1981).
A contractor, such as Hobbs, who complies with the provisions of the Florida Mechanics' *674 Liens Law, Chapter 713, Fla. Stat., has a lien on the improved real property for any money that is owed to him for labor, services, materials, or other items required by, or furnished in accordance with, the direct contract. Section 713.05, Fla. Stat. (1981). The "direct contract" is the agreement between owner and any other person for improving real property. Section 713.01, Fla. Stat. (1981). Under subsection 713.01(3) "contract price" is
the amount agreed upon by the contracting parties for performing all labor and services and furnishing all materials covered by their contract and shall be increased or diminished by the price of extras or change orders as herein defined, or by any amounts attributable to changes in the scope of the work or defects in workmanship or materials or any other breaches of the contract ...
As noted, the contract between Hobbs and Presbyterian Homes had a guaranteed maximum price. Under sections 9.1.7 and 9.1.8 of the contract, there is the provision that the cost of any item not specifically and expressly included in other parts of the contract, as well as costs in excess of the guaranteed maximum cost, would not be reimbursed. By the plain language of the contract, Hobbs knew that it would be paid a maximum amount as affected by change orders. Any claims exceeding the guaranteed maximum cost would need to be substantiated by valid change orders, changes in the scope of the work, defects in material or workmanship or breaches of the contract.
Hobbs argues that section 713.08(1)(c), Fla. Stat. (1981), would allow it to claim the "value" of its labor, services or materials, rather than be restricted to the contract price. This argument ignores section 713.06(1), Fla. Stat. (1981), which provides that
[t]he total amount of all liens allowed under part I [Mechanics' Liens] for furnishing labor, services, or material covered by any certain direct contract shall not exceed the amount of the price fixed by the direct contract... .
Hobbs further argues that it compiled the lien with particularity and if the lien is not recoverable under Chapter 713, then Hobbs would be accountable for a mistake of law, not an intentional wrong or gross negligence. Unfortunately the Mechanics' Lien Law is not to be taken lightly as a tool to force improper payments from owners of improved property. "[O]ne of the purposes of the Mechanics' Liens Law is to assure to the owner, in an arm's length transaction, that so long as he complies in good faith with its provisions he will be able to construct a specific improvement on his property for a given contract price." Miller v. Duke, 155 So.2d 627 (Fla. 1963).
Hobbs included in its claim of lien those amounts which could not be justified by change orders or the terms of the contract. This supports the trial court's determination of a willful exaggeration, resulting in an unenforceable fraudulent lien.
Accordingly, the trial court's partial summary judgment is AFFIRMED.
WIGGINTON and ZEHMER, JJ., concur.